JOHN SCRIVEN v. ELIZABETH HURSH AND ROBERT HILLOCK.

[See 39 Mich. 98; 42 Id. 563; 45 Id. 59 ; 49 Id. 31; 58 Id. 246.]

*Mortgage—Foreclosure—Subrogation.*

On the facts found by this Court (see opinion), the decree below is reversed, and one entered for complainant according to the prayer of his bill. The case is one *purely* of fact.

Appeal from Isabella. (Hart, J.) Argued October 21, 1887. Decided January 12, 1888.

Foreclosure bill. Complainant appeals. Decree reversed, and one entered for complainant. The facts are stated in the opinion.

*O. L. Spaulding,* for complainant.

*Dodds Bros* (*I. A. Fancher,* of counsel), for defendants.

*Benton Hanchett,* for defendant Hillock.

MORSE, J. From a careful examination of the record, and the previous decisions of this Court, we find the facts in this case to be as follows :

1. On the twenty-fifth day of May, 1863, John M. Hursh, the husband of the defendant Elizabeth Hursh, made and delivered to one John Jeffery two promissory notes, each for the sum of $200, with interest at 10 per cent.; one payable on or before the first day of January, 1864, and the other on or before the twenty-fifth day of May, 1864.

2. Various payments of principal and interest were made upon these notes, and the first had been fully paid and canceled before December 1, 1864.

3. At the same time these notes were executed, and to secure the payment of the same, the said John M. Hursh and the defendant Elizabeth Hursh made and delivered to said Jeffery a mortgage, bearing the same date as the notes, for $400, upon the west half of the north-east quarter of sec-

tion No. 22, in township No. 14 north, of range No. 4 west, in the county of Isabella and State of Michigan. Said notes and the mortgage were drawn by and in the handwriting of A. W. Dodge, of Ionia, Michigan, one of the subscribing witnesses to said mortgage.

4. On the first day of December, 1864, by some arrangement between John M. Hursh and said Jeffery, the payments before that time made upon said notes and mortgage were refunded, and the following indorsement made upon the second note:

"All payments and int. refunded December 1, 1864.

"JOHN M. HURSH.
"JOHN JEFFERY."

This indorsement was in the handwriting of Jeffery, excepting the signature of Hursh, which was in the handwriting of Hursh. At this time two new notes, corresponding exactly with the old ones, were drawn up by Jeffery, and in his handwriting, and substituted for the old ones. They were both dated May 25, 1863, and became by the agreement between Hursh and Jeffery the evidences of the debt secured by the mortgage.

5. On the twenty-ninth day of November, 1867, the said John M. Hursh and Elizabeth Hursh executed and delivered to one Cornelius N. Ganson a mortgage upon the same premises to secure the payment of the sum of $2,300,— $1,000 in two years from its date, and $1,300 in three years, —with interest upon the whole sum, payable annually. This mortgage expressly recognized the existence of the $400 mortgage to Jeffery, and was made subject to the same. This mortgage to Ganson was afterwards assigned to one Bickford.

6. On the twenty-ninth day of May, 1871, John M. Hursh conveyed the lands covered by these mortgages to one Wesley Winters, who on the same day deeded the same to the defendant Elizabeth Hursh.

7. On the ninth day of April, 1872, Elizabeth Hursh executed and delivered to John M. Hursh a power of attorney, by which she empowered him to sell and convey all lands of which she was possessed in the counties of Isabella and Clare, in this State, for such prices as to him might seem just and meet, and to execute the necessary deeds to convey the title thereto in fee.

8. The Ganson mortgage was foreclosed by advertisement, and on the twenty-third day of November, 1872, there was

due upon the same about the sum of $1,530, and the time of redemption had nearly expired. The defendant Elizabeth and her husband, John M. Hursh, were unable to redeem the premises, and on the said twenty-third day of November, 1872, the said John M. Hursh applied to Jeffery for a loan of the money necessary for that purpose. He received of Jeffery money enough, at least, for this purpose, and redeemed the premises. And on that day the said John M. Hursh for himself, and also for his wife, under said power of attorney, executed and delivered to said John Jeffery a warranty deed of the 80 acres then standing in the name of his wife, and covered by the Ganson mortgage, and other lands owned, or claimed to be owned, by said John M. Hursh, and known as "Indian Lands." Jeffery, on the same day, executed and delivered back to said John M. Hursh a bond, in which he obligated himself, upon the payment to him of the sum of $3,514.46, with interest at the rate of 10 per cent., on or before one year from its date, to reconvey to the said Hursh, his heirs or assigns, or to whomsoever the said Hursh might name, the lands conveyed to said Jeffery by the said warranty deed.

9. John Jeffery died intestate sometime in the year 1874. His wife, Louisa Jeffery, was appointed administratrix of his estate. Treating the said deed as a mortgage, on the twelfth day of June, 1876, the said Louisa Jeffery, as such administratrix, assigned the same in writing, for a valuable consideration, to the complainant in this suit; said assignment reciting that the mortgage debt was $3,514.46 and interest, and that said sum included the said $400 mortgage and notes.

10. Scriven foreclosed this deed, as a mortgage, in the circuit court for the county of Isabella, in chancery, and obtained a decree for the full amount of the bond and interest. Under this decree, taken upon default after personal service, the premises were advertised to be sold on the sixteenth day of November, 1877. November 13, 1877, John M. Hursh and Elizabeth Hursh petitioned to have the decree vacated, and the case opened so that they might appear and answer; claiming that the indebtedness of John M. Hursh at the date of the giving of the bond was only $1,800, and that the bond was conditioned for the payment of $3,514.46, because Jeffery represented to Hursh that a bond should specify double the amount of the actual consideration. Upon appeal to this Court, the prayer of the petitioners was granted. See *Scriven v. Hursh*, 39 Mich. 98.

11. On the fifth day of November, 1877, the defendant

Robert Hillock purchased the interest of Mrs. Hursh in the 80 acres. Hillock had notice of the foreclosure proceedings, and purchased subject to Scriven's claim.

12. About this time John M. Hursh died. His estate was insolvent. Scriven went no further with his foreclosure suit, and soon thereafter the heirs of John Jeffery brought ejectment against Elizabeth Hursh and Robert Hillock and another to recover possession of the premises. The plaintiffs in the ejectment suit relied upon the deed from Hursh to Jeffery as an absolute conveyance. After several trials, it was finally decided by this Court that this deed was a mortgage, and that, under the power of attorney, Hursh had no authority to execute the same, as far as this 80 acres, the property of Mrs. Hursh, was concerned. See *Jeffery v. Hursh,* 42 Mich. 563 (4 N. W. Rep. 303); 45 Id. 59 (7 N. W. Rep. 221); 49 Id. 31 (12 N. W. Rep. 898); and 58 Id. 246 (25 N. W. Rep. 176).

13. The complainant now files his bill to foreclose the $400 mortgage from John M. Hursh and Elizabeth Hursh to John Jeffery, and asks to be subrogated to the mortgagee's rights in the Ganson mortgage, and to recover taxes paid by him to protect his lien.

The theory of complainant is that, at the time the deed and bond were executed, Hursh obtained about $1,500 to pay the Ganson mortgage, and cash enough besides, together with the amount due upon the $400 mortgage and the $1,500, to amount to the sum named in the bond, to wit, $3,514.46.

The defendants answer that the $400 mortgage has been fully paid, and ought to be canceled and discharged.

Mrs. Hursh avers that she has no definite information of what passed between her husband and Jeffery at the time the deed was made, but on information and belief states that said Hursh at that date did give said Jeffery a mortgage on certain lands in Isabella county to secure him for an indebtedness equal to one-half of the amount stated in the bond. She denies that Hursh was not able to pay the amount due on the Ganson mortgage, or that he ever applied to Jeffery for a loan for the purpose of redeeming the lands from said

mortgage, or that Hursh in any way acted for her in procuring a loan from Jeffery, or in redeeming or paying said mortgage. She has no knowledge whether any part of said loan was used in paying or redeeming said Ganson mortgage, and leaves the complainant to his proofs in that regard.

She further alleges that the other lands mentioned in said deed or mortgage were of great value, to wit, of the value of $9,000, and that the title of Hursh was perfect to the same.

She denies that there is any lien existing upon the 80 acres by virtue of either the $400 mortgage or the Ganson mortgage, and denies the right of the complainant, under his assignment from Mrs. Jeffery, to any interest in either of said mortgages.

Hillock's answer follows that of Mrs. Hursh. He denies any knowledge of complainant's rights and equities in the premises, at the time of his purchase from Mrs. Hursh. except such as appeared upon the face of the assignment from Mrs. Jeffery to complainant.

The proof is conclusive that the $400 mortgage has never been fully paid, except as it was undertaken to be paid or secured by the deed from John M. Hursh to Jeffery. It is also clear that John M. Hursh obtained from Jeffery money enough to pay in full the Ganson mortgage and release it, and it is equally clear that Jeffery, his heirs, legal representatives, or assigns, have never been repaid the money so loaned. Mrs. Hursh, by her mortgage to Ganson after the time she claims the $400 mortgage was paid, recognized the existence and validity of the same, and ratified the arrangement between Hursh and Jeffery by which the payments made were refunded and the new notes executed. By her petition to open the decree of foreclosure in *Scriven v. Hursh*, 39 Mich. 98, she acknowledged an indebtedness of her husband to Jeffery of $1,800 at the time the deed and bond were executed; and in her answer in the present suit she practically admits the same thing. We think she had

knowledge of the loan of the money to redeem the Ganson mortgage, and that she acquiesced in it. We also are of the opinion that she knew of the whole transaction, and that the $400 mortgage was to be paid, and paid only, by the deed.

It follows, therefore, that she, before her assignment or deed to Hillock, had received the benefit of the $400 mortgage and the Ganson mortgage from Jeffery, by an arrangement known to her, and in which she acquiesced. She has not repaid the money received and evidenced by these two mortgages.

The complainant, by his assignment, has acquired the rights of Jeffery in the premises. He is a purchaser in good faith, and has paid value for Jeffery's interest. In equity, he is entitled to a payment of the amount due upon both mortgages, and the taxes paid by him upon the premises.

The decree of the court below will be reversed, and a decree entered here for complainant in accordance with this opinion and the prayer of his bill of complaint, and with costs of both courts.

The other Justices concurred.